SOPHIE BROOKS, PROSECUTOR-RESPONDENT, v. ESSEX WAREHOUSE COMPANY, DEFENDANT-APPELLANT.

Argued February 4, 1948—Decided May 13, 1948.

For the respondent, *Avidan & Avidan* (*Alexander Avidan* and *Sara M. Lewitt*).

For the appellant, *Kalisch & Kalisch* (*Isidor Kalisch*).

PER CURIAM.

The judgment under review should be affirmed, for the reasons expressed in the opinion delivered by Mr. Justice Bodine in the Supreme Court, supplemented by further recital of proofs as follows:

The employer concedes that the workman could have fallen into the elevator shaft through the basement opening but upon the theory that the day's work was done and that there was no reason for the workman to descend from the main floor to the basement floor argues that injury or death so suffered would not be compensable. We think the assumption that

the decedent had ended his day's work and that there was no occasion for him to descend to the basement at or before his fatal accident is not sustained. It is true that one Mullin testified that as the witness was on his way out of the building at around eight o'clock at night he met Brooks on the main floor heading toward the room where the men changed to street clothes; and that when Mullin was asked on the witness stand whether, so far as he knew, Brooks' work was through for the day, he answered that it was. However, it does not appear that Mullin had worked with Brooks on that day or that he had knowledge of the mission upon which Brooks was then engaged or that his statement was more than a belief or guess. Brooks, when found dead the next morning, had not changed to his street clothes; obviously, therefore, he had not done the errand upon which Mullin intimated he was bound. Mullin, although produced as a witness by the respondent, was nevertheless indirectly discredited by the respondent as one of a group of "floaters" or "Bowery bums" employed from time to time as laborers, by the day. The purpose was to inject the suggestion, which was without substantial support, that Brooks had been attacked by one or more of the group with the object of robbery and thrown into the shaft. It is difficult to think of a witness as one of a group of potential murderers for money without having one's regard for his credibility impaired. Thomas Smith, a foreman whose duty it was to assign Brooks to his work, testified that on the day in question he had assigned Brooks to different jobs; that the witness left the warehouse at twenty minutes to seven and that Brooks was then engaged in bracing the drums on a freight car, on a siding alongside of the building, with dunnage so that the load would not shift and become damaged in shipment and that it was a part of Brooks' duty to get the dunnage from any part of the building where inferior materials of that sort might chance to be—"He had access to any floor or wherever [for whatever?] he needed of the size that he could find." A further inference from Smith's testimony is that a fellow employee named Yorke was to work with Brooks. Yorke himself testified that he and Brooks had been working together "bracing" the freight car—"So he

was getting lumber there for me. If he sees anything that has to be done he will go do it himself. If it needs two by fours—I know he brought two by fours for me. * * * The elevator is right alongside." Yorke testified also that the last he saw of Brooks was after dark and the latter "was hammering nails into the dunnage in the freight car"—that the time then was "going towards seven, anyway." Another witness worked with Brooks on the freight car until six o'clock. Yet another claims to have seen him on the first floor at a quarter before seven o'clock. Inasmuch as Brooks' work was such that he was to do what he saw ought to be done and he had access to any floor, it is a permissible inference that all parts of the building, including the basement, were within his ambit of labor. The proofs permit no rational inference to the contrary of the proposition that Brooks died as the result of an accidental fall through an unguarded opening to the bottom of the shaft. There is no justification for assuming the commission of a crime of which there is not the slightest evidence. Except for the testimony of Mullin the fall may have occurred at any time after approximately seven o'clock. Whether it occurred before or after that time the proofs sustain the factual finding of the court below. We agree with the Supreme Court that the determination is well within the holding in *Mountain Ice Co.* v. *Durkin,* 6 *N. J. Mis. R.* 1111; *affirmed,* 105 *N. J. L.* 636.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DONGES, EASTWOOD, BURLING, WELLS, DILL, FREUND, MC-LEAN, SCHETTINO, JJ. 10.

*For reversal*—None.